## COMMONWEALTH *vs.* JOSEPH H. WHITMAN.

Suffolk. November 28, 1876. ENDICOTT & LORD, JJ., absent.

In a criminal case, a witness, who testifies to the doing of the act charged against the defendant, may be asked who the person was who did it, and no exception lies to the admission of his answer, "That man," pointing to the defendant.

On an indictment for larceny, the evidence tended to prove that a boy was sent to the office of A. with money for him; that he found B. in the office, who, on being asked, said he was not A., and that he was going to stay until A. came in; and that the boy handed the money to B., on his signing a receipt therefor, which he did in the name of A. by C., signing a false name instead of his own. The defendant asked the judge to rule that "to constitute larceny, there must be an apprecia-
· tive act of personation, and that if B. said he was not A., there was no larceny." The judge gave this instruction, with the addition, "unless B. held out some inducement to the boy to lead him to believe that he had the right to sign the receipt and receive the money for A." *Held,* that the defendant had no ground of exception.

On the trial of an indictment for larceny, there was evidence identifying the prisoner as the person who had committed the act at the office of A., by a boy who was sent to that office with a receipt for A. to sign. On the receipt was written "twenty minutes past two," denoting the time when the boy started on his errand. A witness for the government, who had an office in the same building as A., testified that at about thirteen minutes to two o'clock he passed the door of A.'s office and saw the prisoner there alone. *Held,* that the defendant had no ground of exception to the admission of this evidence; and that the government, by putting the receipt into the case, was not bound to concede that the interview between the prisoner and the boy was after twenty-two minutes past two o'clock.

A; the trial of an indictment for larceny, it appeared that a boy was sent to an office with a package, and that a man in the office took the package and signed a receipt for it. The government offered in evidence a receipt for a watch, admitted to be signed by the defendant. The judge instructed the jury that "the only legitimate use of the watch receipt was for the comparison of hands, and if the jury believed that the same person wrote the watch receipt and the name attached to the receipt which the boy took, it was evidence tending to show that the man who was in the office, of whom the boy testified, was the defendant." *Held,* that the defendant had no ground of exception.

At the trial of an indictment for larceny, alleging the property stolen to be in "the District Telegraph Company, a corporation duly established by law," it appeared that the District Telegraph Company, a corporation organized under the general law of New York for the incorporation of telegraph companies, received a package of money to deliver, and sent a boy to make the delivery. The government put in evidence a copy of the Statutes of New York, containing this general law, and also an attested copy of the articles of association, under which the company was organized, from the office of the secretary of state of New York, where the law required the original to be deposited. It appeared that the company had undertaken to do business in the city of Boston under its New York organization, by delivering messages, and that this boy was one of its messengers. The judge

instructed the jury " that the court was not bound to say whether the company had or had not authority to do business under its New York charter in the city of Boston; but that if the jury found that it was incorporated under the law of New York as the District Telegraph Company, and attempted to do business here under its organization, and received this money and undertook to deliver it through this boy, as its agent, then it might be considered as having special own- ership in this property, which would be sufficient under this indictment." *Held,* that the evidence was rightly admitted, and that the defendant had no ground of exception to this instruction.

INDICTMENT in two counts for larceny, the first charging the ownership of the property as being in " the District Telegraph Company, a corporation duly established by law; " and the sec- ond, as being in George G. Drew. Trial in the Superior Court, before *Putnam*, J., who allowed a bill of exceptions in sub- stance as follows:

At the close of the whole evidence, and before the arguments to the jury, the attorney for the Commonwealth elected to go to the jury upon the first count.

The evidence for the government tended to show that George G. Drew, a constable of the city of Boston, had an office in Joy's Building, on the second floor of the building, at the head of the first flight of stairs in the rear; that he had an execution against one Lowe, for collection, amounting to $40.65; that on April 19, 1876, the day named in the indictment, Lowe sum- moned a messenger boy, employed by the District Telegraph Company, to take the money to the office of Drew; that he put the money in an envelope directed to Drew, and gave it to the boy, together with a small package of cigars, the envelope being put under the string which was around the package; and that the boy started from the telegraph office, with the envelope and a receipt for the money handed him by the cashier, which he was to have signed, and proceeded to the office of Drew, in Joy's Building. He was then asked by the attorney for the govern- ment, " Was there any one in the office? " The witness an- swered, " Yes." He was then asked, " Who was it? " The wit- ness answered, " That man," pointing to the defendant. To these questions and answers the defendant objected, but the judge admitted them.

The witness then testified that he asked the man if he was G. G. Drew; that he said, " No; " that he asked him " when

COMMONWEALTH v. WHITMAN. 363

he would be in;" that he replied, "He would be in soon, right in;" that he asked him "if he was going to stay till Drew came in," to which he replied, "Yes;" that he then laid down the envelope on the table, took out the receipt, and asked him "if he would sign it;" and that he signed it with a pencil, "G. G. Drew, by Geo. Jones." The receipt had all been filled in, ready for the signature, before it left the telegraph office. This evidence as to asking him to sign the receipt, and the signing of it and the paper itself, was objected to by the defendant, but the judge admitted it. The witness was also asked, "Did the signing of the receipt have anything to do with your leaving the package?" This question was objected to, but the judge admitted it, and the boy answered, "Yes. I should not have left the package, if I had not got the receipt."

The government contended that the boy had been induced to part with the package by reason of some trick or artifice, or some inducement held out by the defendant, to lead the boy to believe that he had the right to sign the receipt, and receive the package. Upon this part of the case, the defendant asked the judge to rule as follows : "To constitute larceny by falsely personating or representing another, there must be an appreciative act of personation or representation. If the man who was in Drew's office when the boy left the package (whoever he was) made no representation that he was Drew, but distinctly told him that he was not Drew, then there was no larceny." The judge gave this ruling, with this addition, "unless the man held out some inducement to the boy to lead him to believe that he had the right to sign the receipt and receive the package for Drew." The judge further, in charging the jury on this part of the case, said that the jury must find that these inducements were held out for the purpose of obtaining the package, the party offering them having the guilty purpose at the time to convert the property to his own use, and afterwards did so convert it, and also that the boy was led to part with the possession of the property solely by reason of said inducements ; to which instruction no exception was taken.

The boy testified that when he left the office of the District Telegraph Company he took with him a written receipt, filled up except the signature. The date, twenty-two minutes past

two, on the receipt, was the hour at which he left the telegraph office, as marked by the cashier. One Howard testified that he had an office in Joy's Building, No. 12; that on April 19, about quarter to two o'clock, he left his office to go to Pemberton Square. He was asked, "When you went out of your office, did you see Whitman?" This question was objected to by the defendant, on the ground that the time fixed by the telegraph company as the time when the boy left the office with the money was twenty-two minutes past two. The judge admitted the testimony. The witness stated that as he passed the door of Drew's office, at about thirteen minutes to two o'clock, he saw the defendant in Drew's office alone, the door being opened as he passed. As he went along Court Street to Pemberton Square he saw the time by the Advertiser's clock, and it was then ten or eleven minutes to two o'clock. On this point in the case, the defendant asked the judge to rule as follows: "The whole of the receipt must be taken as true, so far as the government case is concerned. The time named therein must be assumed by the jury as correct, and the government must be held to concede that the transaction at Drew's office, whoever was the man there, was subsequent to that time, twenty-two minutes past two." The judge declined to give this ruling.

The government offered in evidence a receipt for a watch, written in ink, signed by the defendant, which he admitted to be his handwriting. The government then proposed to exhibit it to the jury for the purpose of comparison of hands, contending that the same person who wrote the paper writing also wrote the signature to the receipt which was handed to the boy. To the admission of this paper, for the purpose of comparison of hands, the defendant objected, but the judge admitted it, under exception. On this part of the case the defendant asked the judge to instruct the jury as follows : "The only legitimate use of the watch receipt, in this case, is a confirmation of the testimony of the boy. If the jury, independently of the receipt, discredit the boy as to identity, then the receipt has no office in the case, and should be set out of consideration by the jury in the balance of the proofs." The judge gave this instruction, with this addition, by way of explanation: "The only legitimate use of the watch receipt is for the comparison of hands.

and if the jury believe that the same person wrote the receipt and the name attached to the receipt which the boy took, it is evidence tending to show that the man who was in the office, of whom the boy testified, was the defendant."

Drew testified that about ten minutes to two o'clock he left his office to go down cellar; that he left no person there; that he was gone some three or four minutes; that on his return he found nobody there, but found a small package of cigars lying on the table, which were not there when he went out; that just before he went down cellar, the defendant, whom he said he knew, came up-stairs, looked into his door, caught his eye and went away out of his sight, but did not go up-stairs or down-stairs. The defendant asked the judge to instruct the jury, "that Drew's testimony as to seeing the defendant in the entry was not in law confirmative of the boy or of Howard, especially when he fixes his time as earlier than ten minutes of two o'clock." The judge gave this instruction, with this addition: "The only effect of Drew's testimony on this point is to show that Whitman was in the entry about the time when, from Drew's testimony, the money must have been left in his office; and that this fact was only a circumstance, the weight of which it was for the jury to determine."

It appeared that the District Telegraph Company was organized under the general law of New York for the incorporation of telegraph companies. The government offered in evidence a printed book, purporting to contain the statutes of the State of New York, and proposed to put it in the case. This book contained the general law above referred to, tit. 19, § 1, and purported to be published under the authority of the secretary of state of New York.

The defendant objected to the admission of the evidence; but the judge admitted it. The government then offered a copy of the articles of association under which the telegraph company was organized. The copy was an attested copy from the office of the secretary of state of New York, in which office the law required that the original should be deposited. There was no evidence by the witness who witnessed it. The defendant objected to the admission of this as evidence, but the judge admitted it. No other evidence was offered in reference to the

corporation, or its authority to act in this state; but it appeared that it had undertaken to do business in the city of Boston under its New York organization, by delivering messages from place to place; and that this boy was one of their messengers. The defendant asked the judge to instruct the jury as follows: "If the jury find that the District Telegraph Company was chartered in New York, it would have no power and no authority to carry on business in this state, and in the city of Boston, until it had recorded a copy of the certificate in this state; and, not having authority here to do business, it could not in law make the telegraph boy the agent of the District Telegraph Company, and this money would not be the property of that company, nor would it be in its possession while in the boy's hands."

The judge declined to give this instruction; but did instruct the jury, "that the court was not bound to say whether the company had or had not authority to do business under its New York charter, in the city of Boston; but that, if the jury found that it was incorporated, under the law of New York, as the District Telegraph Company, and attempted to do business here under its organization, and received this money and undertook to deliver it through this boy, as its agent, then it might be considered as having special ownership in this property, which would be sufficient under this indictment." At the end of the government's case, the defendant moved the judge to order a verdict for the defendant, on the count which alleged the ownership of the property to be in the District Telegraph Company, on the ground that there was no evidence of its capacity to own the property named, or its ownership thereof. The judge declined so to order. The defendant made a like motion as to the other count, on the ground that there was no evidence to show ownership or custody of the property in Drew, but the judge overruled the motion.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*G. W. Searle*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

THE COURT                              *Overruled the exceptions.*