### H. E. SMITH v. THE STATE.

#### No. 4000.   Decided March 11, 1908.

**1.—Embezzlement—Scope of Statute—Implied Authority of Agent.**

Article 938, Penal Code, was intended to include and embrace cases where money was received by virtue of the express terms of the employment or agency, or where such money was received by virtue of the implied authority of the agent, or the authority fairly and reasonably resulting from the express terms of his employment or agency; and where such money was received by authority either direct or such as might be reasonably implied from the situation of the parties and their course of dealing, and the confidential nature of their relations.

**2.—Same—Sufficiency of Evidence—Case Stated.**

Where upon trial for embezzlement, the evidence showed that defendant was in charge of his employer's business to sell organs and return proceeds thereof to his employer; that he was in custody and control of the organ in question by virtue of his employment; that the same had been charged against him upon the stock-book; that another agent of defendant's employer under similar employment took said organ with the consent of defendant, sold the same, and delivered the money therefor to defendant under an agreement that the latter was to pay the same over to the common employer, and that the defendant fraudulently appropriated the money to his own use. Held, that the receipt of such money by defendant by virtue of his agency and employment was authorized and in the scope of his said employment and the subject of embezzlement thereunder; and that its fraudulent conversion supported the conviction under the indictment charging him with embezzlement under said employment. Discussing Brady v. State, 21 Texas Crim. App., 659. Distinguishing Goodwyn v. State, 64 S. W. Rep., 251. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Hood. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of embezzlement of money under the value

of $50; penalty, a fine of $500 and fifteen months confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Hood County, for the offense of embezzlement and upon trial was convicted and he now appeals to this court.

The indictment, in substance, alleged the embezzlement of the sum of $55, the property of J. H. Wilder, which had come into the possession of appellant as the agent and employee of said Wilder and that said money was under his care by virtue of said agency and employment.

The facts show, in substance, that Wilder was engaged in the sale of musical instruments and that he lived at Dublin, Erath County, where he had been engaged in this business for some years. It further appears that appellant and one J. V. Haley were both working for him in the capacity of traveling salesmen during the year 1906, and their headquarters and place of business was at Tolar in Hood County, Texas. It appears that during the year 1906, Wilder shipped several pianos and organs to Tolar and placed same in a rented store there for sale. The following appears, in this connection, in the statement of facts: "That the defendant herein *was in charge* of said house for the said Wilder, and was also at said time a traveling salesman of said instruments for the said Wilder." It is further stated in the statement of facts, "That about the first day of November, 1906, *by the consent of the defendant,* he (Haley) took an organ out of the house at Tolar, Texas, which was under the *control of defendant,* and sold same to a farmer living near said town receiving cash in payment for same." It further appears that this was an Esty organ that had been shipped to Tolar by Wilder among a lot of other organs, for defendant to sell. About the day of the sale of the organ by Haley, the purchase price was delivered to appellant. Appellant told Haley that he was going into headquarters at Dublin on the 5 o'clock train that afternoon, and Haley asked him if he would take some money to Wilder for him, and thereby save buying a draft or money order for same, which defendant agreed to do. Thereupon Haley turned over to him the said sum of $55, to be by him delivered to said Wilder. Haley testified that he told defendant that the money was the proceeds of the sale of said organ, at the time he turned it over to him. Haley further testified: "That it was the duty of every salesman to report sales to the said J. H. Wilder, at Dublin, and deliver to him whatever was received in *exchange* for musical instruments." It appears that Wilder had reports and settlements on all the instruments shipped to Tolar, except the one organ in question for which he had neither received money, notes, nor other thing of value. Appellant never turned over to him any money for the organ. Wilder testifies that

Haley had told him that he had sold this instrument and delivered the money to appellant to be by him delivered to him, the said Wilder. It appears further from the testimony of Wilder, that it was the duty of appellant, under his contract, as well as the duty of all other salesmen to report to him (Wilder) the sales they made, and to make settlement with him personally for such sales and to turn over to him, personally, the proceeds of such sales every week. But he says he allowed his salesmen a good deal of discretion, and permitted them to take notes, cash, cattle or other property in exchange for instruments sold. He also testified that soon after learning that appellant had received the money for this organ from Haley that he met him at Dublin and asked him what he had done with the money, and if, in fact, Haley had given it to him. Appellant acknowledged receiving the money from Haley, and stated that he took it with him when he went to Fort-Worth, and while there he was robbed.

One Mitchell, bookkeeper for Wilder at Dublin, testified, that he had been his bookkeeper for a number of years and had charge of his books during November and December, 1906; that this organ and other instruments were shipped to Tolar *consigned to appellant* to be sold for Wilder and at the time of shipment, a notation was made on the stock book, showing *to whom* the goods were shipped. That these goods were not charged to appellant's account, but his name was written, opposite the name and number of each instrument shipped, on the stock-book, thus showing *to whom* they had been shipped; that in their business they did not charge these instruments to the salesmen taking same out of the house, other than to mark their names on the stock-book opposite the instrument shipped.

It was the claim and defense of appellant that he had borrowed this money from Haley, and that same was a personal loan from Haley to him, and that he had no knowledge that the money in question belonged to Wilder. On this question, the appellant testifies, as follows: "That he asked said Haley, if he had any money, and he replied that he did; that he then asked him if he would loan him $50, or $75, and he said he would; that the said Haley then counted out to him the said sum of $55 in bills, and asked him if they would be enough and he told him it would. That he did not know whose money it was at the time he borrowed same, but supposed it was Haley's and he told Haley he would pay it back to him in a few days; that when he went to the house at Dublin, about a week after said transaction, J. H. Wilder asked him what he had done with the money he had borrowed from Haley." He also says, in substance, that Wilder then told him that the money belonged to him, and for him not to pay Haley, but to pay it to him, Wilder, and that he then told Wilder that was the first he knew of it being his, and that he told Wilder then, to charge it to his personal account, and he agreed to do so.

The court gave an unexceptional charge in the case, in which he submitted every defensive matter arising under the facts, including, in

substance, the only two special charges requested by counsel for appellant.

On motion for a new trial, counsel for appellant raised the question that the verdict is unsupported by the evidence, and that the facts will not sustain a conviction for embezzlement. This matter is raised in the fourth ground of his motion for new trial, as follows: "Because the verdict of the jury is wholly unsupported by the evidence in this, that before the jury would be authorized to convict the defendant, they must find from the evidence that the defendant, by virtue of his agency, was charged with the duty of receiving the particular money in question, when the evidence wholly fails to show that defendant, by virtue of his employment or agency under the said Wilder, was, at any time, chargeable with the duty of receiving money or property from the other agents and employees of the said Wilder, but on the contrary the whole evidence shows that he was not charged with said duty, but that each salesman was required to report to said Wilder on his own account, and if the said Smith undertook to deliver the money in question to the said Wilder for the said Haley, he did so, not under and by virtue of his employment with Wilder, and not because he was chargeable with the duty so to do, but as an accommodation to the said Haley." We do not believe that this contention can be or should be sustained. That the appropriation of the money was wilful and corrupt is not only affirmed by the verdict of the jury but is shown by the evidence, in our judgment, practically beyond controversy. Our statute on the subject of embezzlement, provides: "If any officer, agent, clerk or attorney-at-law, or in fact, of any incorporated company or institution, or any clerk, agent, attorney-at-law or in fact, servant or employee of any private person, copartnership or joint stock association, or any consignee or bailee of money or property shall embezzle, fraudulently misapply or convert to his own use, without the consent of his principal or employer, any money or property of such principal or employer which may have come into his possession or be under his care by virtue of such office, agency or employment, he shall be punished in the same manner as if he had committed a theft of such money or property. (Article 938, Penal Code.)

The question arises then, under the facts of this case, did the money in question come into the possession of appellant by "virtue of such office, agency or employment?" The affirmative of this, we think, under the evidence is indisputable. The practically uncontradicted evidence shows that appellant was in charge of the business at Tolar and in custody and control of this organ by virtue of his employment. It is shown by the evidence that when the organ was taken from the building by Haley, that it was done by appellant's consent. It is shown that this organ, as well as other property at Tolar had been charged upon the stock-book as being in possession of appellant. Haley (the man who took the organ from the possession of appellant by appellant's consent), returns with the money, representing the value of the organ, and, knowing the employment and relation of appellant, that he was in control of the business at Tolar as the agent of Wilder, knowing that he had

received the organ from appellant and by his consent, and the trust relation and agency between appellant and Wilder, delivers the money, $55, to him for the purpose of being transmitted and paid to Wilder. Was such receipt of the money by appellant by virtue of his office, agency or employment? We think it must be so held. While there are some expressions in the opinions of this court which might, without careful analysis, seem to lend some support to the contrary of the view, here expressed, it is not believed that, as applied to the facts of this case, they are in conflict with the rule here laid down. In the case of Brady v. State, 21 Texas Crim. App., 659, Judge Hurt lays down this rule: "To constitute embezzlement under the Code of this State, the conversion must be of money or other property of the principal, or employer, and it must have come into the possession of the agent or employee by virtue of his agency, or employment." And, as applied to the facts of that case, he holds, in substance, that no such relations were shown. In that case it seems that the appellant presented Dahlich a bill or account against him, in favor of his employer (Patterson), for the price of a bale of cotton. It seems that Dahlich knowing the bill to be due and owing to Patterson, and knowing that defendant was or had been in the employ of Patterson, and believing defendant authorized to collect the money, paid it to him; but it appears, from the testimony of Patterson, that Brady was not authorized to present the bill or collect said money, and his collection of same was without any authority from him. Quoting from the facts, as they appear in the opinion, we find the following: "I never authorized him to collect this money and he had no authority to receive it. *He acted outside and beyond his employment by me.*" Clearly in any case where the money was received outside of and beyond the terms of employment, it cannot be held that it came into the possession of the agent by virtue of his office, agency or employment.

A proper solution of the decision in this case can only be arrived at by a fair and reasonable construction of our own statute, having in mind the crime denounced by it, and its proper constituent elements. It was said by Judge Winkler, as far back as 1878, in the case of Griffin v. State, 4 Texas Crim. App., 390: "The only safe guide in determining what constitutes the crime of embezzlement, and what persons are amenable to the charge, is to be found in our own code and statutes, and in the adjudications thereupon. Decisions of other States are to be consulted with great caution, in view of the very diverse character of their enactments on this subject." We think our statute was intended to include and embrace cases where money was received by virtue of the express terms of the employment or agency, or where such money was received by virtue of the implied authority of the agent, or the authority fairly and reasonably resulting from the express terms of his employment or agency, and that the better view is, that where such money was received by authority, either direct, or such as might be reasonably implied from the situation of the parties and their course of dealing, hav-

ing in view their position and attitude and the confidential nature of their relations, that in every such case it ought to be held that such money or property was in the care of such agent by virtue of such office, agency or employment. In other words, a reasonable rule of interpretation ought to be employed in testing this statute. Such a rule, if it may fairly be adopted, having in mind the language of the code ought to obtain, as would discourage defalcation and protect the employer and society. It ought not to be required by the State that in prosecutions for embezzlement that it should be in peril of sustaining defeat in a just prosecution, because of some technical lack of specific authority in respect to some particular act, if under all the circumstances such authority might reasonably be implied and found as a fact by the jury in the light of the relation existing between the parties. To hold any other rule would frequently, if not universally, make it impossible to convict in the most flagrant case of embezzlement. If we only suppose a bank cashier, collector, bookkeeper, clerk or agent to have stolen the bank's money, if in such case a defendant could defeat a prosecution on the claim that the particular act was somewhat beyond the precise and express limits of his particular duties, though the money and funds in fact, came to him according to the customs and usages of the institution, by the color of his authority and by means of his employment, the result would be to render the statute a vain and foolish and idle thing. Nor do we believe there is any well considered authority holding to the contrary. Under the old common-law system in some jurisdictions, where the shadow was more important than the substance, and where highly technical rules seem to be the delight of the profession such a doctrine did once obtain.

In discussing the question of receipts in excess of authority, the following appears in the 2nd edition of the 10th Am. & Eng. Enc. of Law, p. 991: "Some courts have held that it is not embezzlement under such a statute for a servant, agent or other person to convert property, if in receiving the same he acted in excess of his authority, or contrary to his master's or employer's direction." This is supported, among other cases, by the case of Rex v. Snowley, 4 C. & P., 390; 19 E. C. L., 436, Parke, J. It is also stated that this case was followed in two other English cases cited by the author, but the author says: "Other courts have taken a different view and have held that a man may receive property by virtue of his employment or in the course of his employment within the meaning of such statute, though in receiving it he acts in excess of his authority." This rule is supported by many English cases, one of which in express terms overrules the earlier case of Rex v. Snowley. The only cases cited in America by the author of this work are in support of the doctrine that if the property was received by virtue of the agent's employment, or in the course of his employment, that such receipt was in the meaning of the statute, though in receiving it he acts in excess of his authority. Ex parte Hedley, 31 Cal., 108; Kerr v. People, 110 Ill., 629; S. C. 51 Am. Rep., 706. This doctrine is a rea-

sonable, just and fair rule, and seems to be well supported by authorities.

Nor do we understand that the rule laid down in the 15th Cyclopedia of Law & Procedure, p. 494, is out of harmony with the views here expressed. On the contrary, as we understand the author, he expressly affirms the construction which we here place on his statute. In Sub. F, p. 493, the author says: "If a servant, clerk or agent has merely the custody of the money or goods which he feloniously appropriates, the offense is larceny; if he has the possession, it is embezzlement. Under the English statutes and those of some of the United States, it is held that the property embezzled must have come into the possession of the servant from one other than the master, for if it has first come into the possession of the latter, the conversion by the servant is larceny and not embezzlement; but the weight of modern authority is to the contrary." The author also lays down the rule which is in strict harmony with our statute: "In order to constitute embezzlement the accused must occupy the designated fiduciary relation, and the money or property must belong to his principal and come into the possession of the accused by reason of such employment." The author quoted also, cites with approval, the case of Rex v. Beacall, 1 C. & P., 454; 12 E. C. L., 265, which says: "If a servant receives money on his employers' account and embezzles it, he is guilty of the felony, although they had no right to it, and was a wrongdoer in receiving it."

The only case we have found which by its language might seem to be out of harmony with the view here expressed, is the case of Goodwyn v. State, 64 S. W. Rep., 251. In that case, Goodwyn was indicted for embezzling $29 the property of N. P. Griffin, who was justice of the peace. It seems that Griffin, the justice of the peace, gave certain money to one Zulch to hand to Goodwyn, to be delivered to the county treasurer of Madison County. In the opinion, this language appears: "Appellant's fourth proposition is: 'The money was not the property of Griffin, nor of Zulch, but the proof showed it belonged to Madison County; and, for want of proof of Madison County or E. E. Day, its treasurer, the court erred in failing to instruct the jury to return a verdict of acquittal." Now, at first blush this might seem to be analogous to the case here, and there might seem to be some plausibility in the contention that the money here charged to have been embezzled, in fact, belonged to Haley who had given it to appellant to be delivered to Wilder. Judge Brooks evidently thought it unnecessary to state the grounds upon which he held in that case, that the money belonged to Griffin, and not to the county. A moment's reflection, it seems to us, should be sufficient to disclose the difference of the cases. Griffin was a public official in Madison County; his relation to the county was personal and due to his election and qualification as an officer of that county; he had no authority to pay funds or money belonging to the county to any one except some person authorized by law to receive it; and therefore when he delivered the money to someone else to be delivered

to Madison County, such money remained his money and continued his property and never was the money of Madison County until it reached the treasurer of said county.

We believe that the court did not err in overruling appellant's motion for a new trial, and that under the facts as here presented, the charge of the court was sufficient, and that the verdict and judgment were abundantly sustained by the evidence. So believing, the verdict and judgment of the court below ought to be and is in all things hereby affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge (dissenting).—I respectfully dissent from the opinion of my brethren.

Appellant was charged, as agent and employee of a private person, to wit: J. H. Wilder, with embezzling the sum of $55, which money had come into his possession and was under his care by virtue of said agency and employment.

The facts show that Wilder was engaged in the sale of musical instruments at Dublin, in Erath County, and had been so engaged for some years; that J. V. Haley and appellant were both working for him in the capacity of traveling salesmen, during the year 1906. At some time in the fall of 1906, Wilder shipped some pianos and organs to Tolar, Hood County, and rented a house and opened up a branch business there, or rather he made it a distributing point for sales of instruments made in the territory surrounding Tolar. Haley and appellant were his traveling salesmen in that territory, the instruments being shipped to Tolar in care of appellant. Witness had reports and settlements on all the instruments shipped to Tolar, except one organ for which he had neither money, notes nor other thing of value. Appellant never turned over to him any money for the organ. Wilder further testifies that Haley had told him that he had sold said instrument and delivered the money to appellant to be delivered by appellant to the said Wilder; that Haley never wrote witness anything about the matter, and that he (witness) had never heard of the transaction until about the 1st of December; that the organ in question was never charged to appellant on his personal account but was charged to him on the general stock-book. This witness paid all his salesmen's traveling expenses and salary when they were working as salesmen, as was appellant at the time of this transaction. This witness further states it was the duty of appellant under his contract, as well as the duty of all other salesmen, to report to him, Wilder, the sales they made, and to make settlement with him personally for such sales, and to turn over to him, personally, the proceeds of such sales every week. He says he allowed his salesmen a good deal of discretion and permitted them to take notes, cash, cattle, or other property in exchange for instruments sold but required them to report to him and make settlements with him personally for any such sales, and that they usually came into the house at Dublin once per week to make settlements for sales that were made during that week. He said he never had any

settlement concerning the organ in question and learned about December 1st that appellant had received the money for same, but he never delivered the money or its equivalent to him. Soon after learning that appellant had received the money, he met him in Dublin and asked him what he had done with it, and further asked him if Haley had in fact, given him the money, which appellant acknowledged and said that he took it with him when he went to Ft. Worth, and while there, was robbed. Mitchell, the bookkeeper for Wilder, at Dublin testified that he had been bookkeeper for Wilder at Dublin for a number of years, and had charge of the books during November and December, 1906. The books did not show that Wilder had ever received anything for this particular organ. That this organ and other instruments were shipped to Tolar to appellant to be sold for Wilder and at said time were marked on the stock-book showing to whom shipped. That same were not charged to appellant's account, but appellant's name was written opposite the name and number of the instruments shipped, on the stock-book, thus showing to whom said instrument had been shipped. That in their business they did not charge these instruments to the salesmen taking same out of the house other than mark their names on the stock-books opposite the instrument.

Haley testified that sometime in the early part of December, along about the 1st of the month, he was a traveling salesman of pianos and organs for J. H. Wilder of Dublin, Erath County, Texas; that prior to the 1st of November, 1906, Wilder had shipped several pianos and organs to Tolar, Hood County, and placed them in a rented storehouse for sale; that appellant was in charge of the house for said Wilder, and was also at the same time a traveling salesman for the sale of said instruments for their mutual employer Wilder; that they sold said instruments from wagons throughout the country to farmers, and other parties wishing to buy. That about the first of November, by consent of appellant, he took an organ from the house at Tolar, and sold it to a farmer, living near said town, and receiving himself the cash in payment for it. That on returning to Tolar after making the sale, the appellant, witness, and Cap Smith (also a witness in the case), were at their boarding house in Tolar. That appellant stated to witness that he was going into headquarters at Dublin at the 5 o'clock afternoon train, whereupon, he (witness) asked appellant if he would take some money to Wilder for him (witness) and thereby save buying a draft or money order for same; to which appellant assented, and thereupon witness turned over to appellant the sum of $55.25, to be by him delivered to the said J. H. Wilder. He further testified that it was the duty of each salesman to make reports of their own sales to Wilder at Dublin and to deliver to him whatever was received in exchange for musical instruments sold. This witness says he wrote Wilder the next day after the above transaction, but Wilder testifies he never received the letter.

The witness, Cap. Smith, testified that appellant stated to Haley at the boarding house that he would like to borrow some money from him,

Haley. Haley told him he did not have any· to·loan, but stated he had some money belonging to Wilder, and appellant stated he was going to Dublin on the 5 o'clock train, whereupon Haley asked appellant if he would take the money to Wilder for him (Haley) and thereby save expense of buying exchange or money order. To this appellant agreed and Haley then gave appellant $55 and some cents.

Appellant testified that he was working for Wilder as was Haley; and that they were salesmen and testified practically as did Smith with reference to the borrowing transaction, except that he testified positively that Haley loaned him the money; that he did not know whose money it was at the time· he borrowed it, but supposed it was Haley's, and told Haley that he would pay it back to him in a few days. That he went into the house at Dublin about a week after said transaction, and Wilder asked him about the money he borrowed from Haley. Witness told him that he had spent part of it and had part of it, and would pay Haley as soon as he got the money on some sales. That Wilder then told him that the money belonged to him, and for appellant not to pay Haley, but to pay it to him, Wilder; that Haley had not paid him for the organ he had sold. Appellant then told Wilder it was the first he knew of it being his money, and if such was the fact he would pay it to him and not Haley, and that he had that much coming to him, and to charge it to his personal account, which Wilder agreed to do. He further testified that he was·not aware that Wilder had any interest in the money he had borrowed from Haley, until Wilder told him of it as above mentioned. That of this amount he had paid out for the benefit of Wilder, as traveling expenses, the sum of $15.25, and that this was taken into account when Wilder requested him to pay same to him for Haley, that he settled the balance by having it charged to his personal account, to all of which Wilder agreed in order that he might collect the debt due him. This is the case on the facts as made by both sides. The evidence excludes the idea that it was within the scope of appellant's employment to collect from another agent money or other property belonging to Wilder.

It is contended, among other things, that this evidence does not support a conviction against appellant for embezzling Wilder's money; that the relation of agent and principal did not exist so as to make appellant criminally responsible under any of the testimony. The statute provides that, "If any officer, agent, clerk or attorney at law,· or in fact, of any incorporated company or institution, or any clerk, agent, attorney at law or in fact, servant or employee of any private person, copartnership or joint stock association, or any consignee or bailee of money or property shall embezzle, fraudulently misapply or convert to his own use, without the consent of his principal or employer, any money or property of such principal or employer which may have come into his possession or be under his care by virtue of such office, agency or employment, he shall be punished in the same manner as if he had· committed a theft of such money or property." Article 938, Penal Code.

Now the question is, was the fiduciary relation existing between appellant and Wilder of such character under the facts and this statute, as would constitute one principal and the other agent in regard to the money received by appellant for. Haley? The testimony is without contradiction that appellant was the agent, or traveling salesman of Wilder, his duty being to sell musical instruments and collect the money for his own sales, and pay over, personally, each week, to his employer Wilder. Nowhere in the testimony is there any claim asserted that appellant or any of the traveling salesmen, had the right to collect the money arising from the sales made by any other salesman of the principal, or to make settlements with the principal for any other sales made by salesmen, or to in any way assume the right of collecting or handling the money arising from sales other than those made by himself. In order to hold appellant responsible, under the statute, this money must have come into his possession by virtue of his employment as such salesman or agent of Wilder. Otherwise, he would not be guilty, for in our State and under our Penal Code no criminal responsibility arises except for violations of the plain letter of the statute. This question came before the court in the case of Brady v. State, 21 Texas Crim. App., 659, Judge Hurt delivering the opinion for the court. The court there said: "To constitute the crime of embezzlement under our Code, the conviction must be of money or other property of the principal, or employer, and it must have come into possession of the agent, or employee, by virtue of such agency or employment. Unless these two facts are proven, the conversion may be a crime, but it is not the crime of embezzlement. . . . To recur to our question: Did this money come into the possession of defendant by virtue of his agency or employment? Was the money thus in the possession of the defendant the money of Patterson? If these questions are to be answered in the affirmative, the conviction is right and must stand; otherwise not. We are of the opinion that the money was not collected by the defendant by virtue of his employment, and that the money converted was not the money of the principal, Patterson, for the reason that after the collection made by defendant, Dahlich's debt to Patterson still existed." Dahlich was the man from whom the money was collected and Dahlich owed Patterson a debt and defendant collected it, and was charged with its embezzlement. The facts showed it was not appellant's particular business to collect that money. The testimony in this case excludes the idea that appellant had the right to collect any money, except for sales made by him, and the only trust relationship existing between appellant and Wilder was as salesman to sell instruments and collect money for his own sales and for such collections and sales to personally account to Wilder. Nowhere in the record is there any intimation that any such trust relation between appellant and Wilder, his principal, as authorized him to receive, collect or handle in any way any money of Wilder's, except such as he collected for organs, or instruments sold by himself. It is laid down in the 15th volume of Cyclopedia of Law and Procedure, p. 494: "In

order to constitute embezzlement the accused must occupy the designated fiduciary relation, and the money or property must belong to his principal, and come to the possession of the accused by reason of such employment." In note 15 to said text, there are a great number of cases cited to support the text: From Illinois, Kentucky, Massachusetts, Michigan, Missouri, Nevada, Pennsylvania, Washington and England; and among others from Texas, we find Loving v. State, 44 Texas Crim. Rep., 373; 71 S. W. Rep., 277; Brady v. State, 21 Texas Crim. App., 659; Griffin v. State, 4 Texas Crim. App., 390. The decisions are so numerous in the footnote that I have deemed it unnecessary to include them.

On p. 991, vol. 10 of Am. & Eng. Enc. of Law, second edition, we find this stated: "RECEIPT IN EXCESS OF AUTHORITY—Some courts have held that it is not embezzlement under such a statute for a servant, agent or other person to convert property, if in receiving the same he acted in excess of his authority, or contrary to his master's or employer's directions." In note 2, decisions are cited in support of the text. Among others, in the case of Rex v. Snowley, 4 C. & P. 390, Parke, J. it was held, that a servant who was employed to lead a stallion, and who received a sum for the hire of same, which was less than he was authorized by his master to take, and appropriated it, was not within the statute, because his act was without authority, and the money, therefore, was not received by virtue of his employment. This case was qualified to some extent in Rex v. Aston, 2 C. & K. 413, on the theory that as the servant was employed for the particular purpose of receiving hire for the service of that stallion, the fact that he departed from the price fixed would not take him out of the rule that he was acting as the agent within the scope of his employment, but in all the English cases they follow the rule laid down that, in order to make the party responsible for embezzlement, the money received and embezzled must have come to him within the scope of his employment. This seems to be almost the universal rule. Some of the cases have drawn a distinction as to what facts may or may not bring the agent within the fiduciary relation under the contract of the employment, but so far as I have been able to ascertain the statute makes a part of the definition of the offense that the funds must be received by virtue of the agency or employment; that money received in excess of that employment will not constitute embezzlement. This rule is not departed from in the Snowley case, supra but in the subsequent case of Rex v. Aston it was held that the decision was wrong, because the money was received by virtue of such employment or agency. The doctrine itself was not overruled, but it was held the law was improperly applied to the facts. The main proposition has been upheld in all the English cases so far as I have been able to ascertain. Rex v. Mellish, Russ & R. 80; Rex v. Snowley, 4 C. & P. 390, 19 E. C. L. 568; Rex v. Salisbury, 5 C. & P. 155; 24 E. C. L. 502; Rex v. Hawtin, 7 C. & P. 281; 32 E. C. L. 613; Reg. v. Wilson, 9 C. & P. 27; E. C. L. 28; Reg. v. Harris, 6 Cox C. C. 363; Dears C. C. 344, as well as by the

American cases, as follows: Griffin v. State, 4 Texas Crim. App., 390; State v. Johnson, 21 Texas, 775; Reed v. State, 16 Texas Crim. App., 586; Brady v. State, 21 Texas Crim. App., 659; The Snowley case was followed in Rex v. Thorley, 1 M. C. C., 343, and Rex v. Hawtin, 7 C. & P., 281.

In Rex v. Harris, 6 Cox C. C. 363, it was said: Where a person employed as miller in a mill in a county jail, whose duty it was to receive and grind grain brought by persons with a ticket from the porter's lodge, and receive and account for money due for grinding, and who was prohibited from receiving grain without such a ticket in violation of his duty, and appropriated the money received for grinding it, a conviction of embezzlement was set aside, because he did not receive the money by virtue of his employment. "The question of embezzlement vel non has been with almost, if not entire, unanimity held to be a question primarily dependent upon the statute alleged to be violated. The breach of trust is also essential, and where there is no breach of trust or violation of confidence intentionally reposed by one party and voluntarily assumed by the other, there can be no crime, unless, of course, the statute should in express words cover such case. Therefore, the conversion of money by a bank depositor, to whom upon drawing his deposit, a greater sum was paid by mistake than the amount of his deposit, is not embezzlement. Commonwealth v. Hays, 14 Gray, 62; State v. Heath, 8 Mo. App., 199."

"Under the former English statutes it was necessary that the property should have come to the hands of the defendant 'by virtue of his employment,' that is, it must have come into his possession in the ordinary course of his duties, or he must have had special authority to receive it. The nature, scope and extent of his employment must have been such as to authorize the receipt of the money or property embezzled, or he must have been specially authorized to that effect. Regina v. White, 8 Car. & P. 742; Regina v. Townsend, Car. & M. 178; Regina v. Masters, 3 New Sess. Cas. 326, same case in 2 Car. & K. 930; Rex v. Smith, Russ & R. C. C. 516; Rex v. Hughes, 1 Moody C. C. 370; Rex v. Batty, 2 Moody C. C. 257. And if he received the possession of the property without specific or general authority, but the taking was out of the scope of his service, he was not within the statute. Rex v. Thorley, supra; Rex v. Arman, Dears C. C. 575; Rex v. Salisbury, 5 Car. & P. 155; Regina v. Wilson, 9 Car. & P. 27; Rex v. Hawtin, 7 Car. & P. 281; Rex v. Snowley, 4 Car. & P. 390; Rex v. Becall, 1 Car. & P. 310, and cases supra. This was held to be so, although the party paying him the money believed him to be properly authorized. Rex. v Hawtin, 7 Car. & P. 281."

"Many of the American Statutes contain, after the manner of the original English statute, the phrase, 'by virtue of his employment.' And it is one of the essential elements of the crime that the agent or servant, clerk or bailee, received the property in the course of his employment; and this must be alleged and proved as well as that the property belonged to the master, or to the principal, and that the defendant appropriated it to his

own use.   Ex parte Hedley, 31 Cal. 108; Pulliam v. State, 78 Ala., 31; State v. Johnson, 48 Iowa, 370; Commonwealth v. O'Malley, 97 Mass., 584; People v. Burr, 41 How. Pr., 293; People v. Sherman, 10 Wend., 299; People v. Hennessey, 15 Wend., 147; People v. Dalton, 15 Id., 581; People v. Allen, 5 Denio, 76; Ricord v. Central Pacific R. R. Co., 15 Nev., 167; Johnson v. State, 9 Baxt., 281; Griffin v. State, 4 Texas Crim. App., 390, see same case reported in Lawson's Crim. Def., 909; State v. Johnson, 21 Texas, 775; Reed v. State, 16 Texas Crim. App., 586; Bradly v. State, 21 Texas Crim. App., 659."

And it has been held further that this would seem to be true, even where the statute contains no such words; for the gist of this offense as distinguished from larceny, is the breach of trust committed by one occupying the fiduciary relation, and if there be no such relation, or if the property was not received with reference to that relation, but in an entirely different capacity, or outside of or in excess of such employment, then it is not embezzlement because there is no breach of trust or confidence.  See Commonwealth v. Hays, 14 Gray, 62; same case reported in 74 Am. Dec., 662.  And this limit is marked by gist of the offense which rests upon the particular character of fiduciary relation. So long as this relation is shown, the offense may exist; when it fails there can be no embezzlement.

There are a great many cases along this line in the note to Calkins v. State, reported in the 98 Am. Dec. p. 121, and 136, and 137.  The facts of this case tested by the above authorities and propositions enunciated, would indicate that appellant receiving money from Haley, another salesman, did not occupy the fiduciary relations necessary to constitute him an embezzler of Wilder's money.  If the testimony of Wilder, Haley and appellant, state correctly the fiduciary relation or the office of trust between appellant and Wilder, then appellant's only fiduciary or trust relationship was found in his authority as agent or salesman to sell musical instruments and collect the money, for such sales, as he personally might or did make.  Nor am I of the opinion that the fact that the organs were shipped to Tolar and placed in a house under the charge of appellant, change such fiduciary relation or agency.  If appellant had converted any of these organs or money for those he sold, while in his possession, it would have been within the scope of his agency, but when Haley took the instrument out from the house at Tolar, and sold it, it passed into the possession and agency of Haley, and out of the possession and away from the agency of appellant; and the testimony of Wilder, Haley and appellant all prove this, clearly.  Appellant was not authorized to settle with or pay over money to Haley.  Haley understood this to be so, for when he ascertained that appellant was going to Dublin, he requested him to take the money and pay it over for him, Haley, to Wilder.  Haley, Wilder and appellant all recognized the want of agency on the part of appellant to handle that money as Wilder's agent, for it is shown by Haley, appellant and Wilder, that appellant did this not as agent of Wilder, but as an act of courtesy or accommodation to Haley.  It

seems to be settled by the Brady case, 21 Texas Crim. App., above quoted, that the debt due from Haley to Wilder still existed. If appellant was authorized to receive as Wilder's agent from Haley, then Haley's obligation to Wilder was discharged and his responsibility ceased. It occurs to me that this matter may be tested, in part at least, in this form: Suppose Wilder had sued Haley for the money turned over to appellant to be carried by appellant to Wilder. Could Haley have plead payment of the debt to Wilder by reason of the fact that he turned the money over to appellant to be carried to Wilder? The answer to this question must be in the negative. Haley had no authority to send money to Wilder, and thus discharge his trust. Appellant had no authority as agent of Wilder to receive it. Under the terms of his agency to Wilder it was Haley's business to settle personally with Wilder every week at the Dublin House, for his own sales. This he did not do, and there is no pretense that he did. He only sent it by appellant in order to save the trouble and expense of purchasing a postoffice order or draft. Appellant had no authority to receive Haley's sale money or settle Haley's matter with Wilder, and the evidence fully shows he had no such authority. So, upon the whole case, and the authorities cited, I am of the opinion that the receipt of the money by appellant from Haley and his accomodation or agreed accomodation to Haley would not bring him within his, appellant's scope of agency to and with Wilder. It was beyond his agency, in excess of his authority, and he was performing an act which was in no sense within the scope of his agency; it was in excess of and beyond that agency. If this is correct, then appellant was not guilty of embezzlement of Wilder's property. So believing the law to be, I am persuaded the judgment ought to be reversed.