## J. M. McCue v. The State.

No. 16281. Delivered November 15, 1933.
Reported in 65 S. W. (2d) 314.

The opinion states the case.

*J. M. Deaver* and *Fred C. Knollenberg,* both of El Paso, for appellant.

*Roy Jackson,* Dist. Atty., and *John W. Penn,* Asst. Dist. Atty., both of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement; the punishment, confinement in the penitentiary for two years.

Under the terms of a contract with Bankers' Union Life Company, a foreign corporation, appellant agreed to sell bonds of the company in Texas and New Mexico. As agent of the corporation, appellant sold Mrs Isabella Fineau a number of bonds, for which she paid him four hundred and fifty dollars. The bonds were to be delivered at a future date. No delivery was ever made, the proof on the part of the state being to the effect that appellant converted the money to his own use and

benefit and made no report of the sale to his company. The indictment was predicated upon the embezzlement of one hundred dollars of the money involved in the transaction with Mrs. Fineau.

Testifying in his own behalf, appellant declared that he had secured the bonds for delivery to Mrs. Fineau, but that they had been stolen from him. He said that he had bought bonds from various parties with part of the money Mrs. Fineau had paid him. He admitted that he did not account for the money to the corporation. He said: "I was drinking off and on for several days. Some of the money went there."

As shown in bill of exception No. 2, the state was permitted to prove by oral testimony that the Bankers' Union Life Company was a corporation organized under the laws of Colorado. It appears to be the rule in this state, as well as in other jurisdictions, that in embezzlement cases the fact of corporate existence may be proved by the oral testimony of a witness who has knowledge of the fact. Branch's Annotated Penal Code, sec. 2610; 3 Enc. of Ev., p. 604; Landis v. State, 214 S. W., 827; Fleener v. State, 23 S. W., 1; Meadows v. State, 285 S. W., 380; Com. v. Whitman, 121 Mass., 361; Lowe v. State, 46 Ind., 305; State v. Jaynes, 78 N. C., 504.

The trial court refused to permit appellant to prove that the corporation had no permit authorizing it to sell bonds in the State of Texas. It is appellant's position that his contract with the corporation, as well as the transaction with Mrs. Fineau, was illegal, in view of the fact that the corporation was operating in Texas without having complied with what is commonly known as the Blue Sky Law. Specifically, appellant urges that the alleged illegality of the transaction would have the effect of releasing him from criminal liability, notwithstanding he might have embezzled the funds of the corporation. Answering appellant's contention, the state takes the position that the law does not require a permit to sell bonds, but only stock; and, further, that if the transactions were illegal, appellant could not with impunity embezzle the funds arising from such transactions. Again, the state insists that the transaction was involved in carrying on interstate business. We deem it unnecessary to determine whether a permit was required, or to decide whether the transaction was involved in purely interstate business. Not conceding that the transactions were illegal, the opinion is expressed that the fact that the owner of the money or property embezzled obtained it illegally does not constitute a defense to an indictment against one who embezzles it from such owner. State v. Reynolds (Supreme Court of New Jer-

sey), 47 Atl., 644; State v. O'Brien, 94 Tenn., 79; State v. Tumey, 81 Ind., 559; State of Missouri v. Blakemore (Mo. Sup. Co.), 27 L. R. A., New Series, 415. The proposition is well stated in Reynolds v. State, supra, as follows:

"The fact that * * * foreign corporations are required to do certain things to be authorized to do business in this state, and are liable to a penalty if they do not do so, is of no consequence, as between the state and the defendant, in an indictment. The crime is against the state, not the owner of the property."

For example, it has been held that one is liable for the embezzlement of the proceeds of liquor sold by him as agent for the owners, notwithstanding such sales were made in violation of the license laws. Com. v. Smith, 129 Mass., 104. Again, it has been held that it is no defense to a prosecution against a city officer for embezzlement to show that the money embezzled was collected from persons engaged in unlawful traffic in intoxicating liquors under an arrangement between such persons and the city, whereby immunity from prosecution was secured to them. State v. Patterson, 66 Kansas, 447. And the fact that the money embezzled was collected on a lottery ticket issued in the transaction of illegal business has been held not to constitute a defense. Woodward v. State, 103 Ind., 127. Examples might be multiplied. See, also, Richards v. State, 29 S. W. (2d) 367, and authorities cited. With the exception of Cory v. State, 55 Ga., 236, our conclusion appears to be supported unanimously by the judicial precedents.

It was alleged in the indictment that appellant was the agent of Bankers' Union Life Company, an incorporated company, and that said incorporated company was the owner of the money alleged to have been embezzled. One of the provisions of appellant's contract read as follows: "All proceeds, whether cash or notes, received by Salesman from the sale of securities of the company, or from items entrusted to him for collection by the company or by District Manager, shall be a trust fund and must be remitted to Sales Manager without delay." It appears that C. B. McCormick was president and sales manager of the corporation. He executed the contract with appellant. There was a provision in the contract to the effect that appellant should make remittance to the sales manager, C. B. McCormick, at the home office in Denver, Colorado. We quote a further provision: "It is understood and agreed that Salesman has no direct contractual relations with Company, but shall be, and is subject to all provisions, limitations and conditions of District Manager's contract, except as herein modified, and ex-

cept for the payment of commission, for which District Manager shall be solely responsible to the Salesman." It is the position of appellant that there is a variance between the allegation and proof as to ownership, the specific contention being that the proof shows that appellant was the agent of C. B. McCormick, district manager of the corporation, whereas in the indictment it is averred that he was the agent of the corporation. The testimony on the part of the state was to the effect that C. B. McCormick, as president of the corporation, had authority to enter into contracts for the corporation appointing subagents. We find no provision in the contract to the effect that C. B. McCormick should be liable to the corporation for misapplication of the company's funds by appellant. There was a provision in the contract that appellant should sell the corporation's bonds and collect the proceeds of the sales. Looking to all of the provisions of the contract, we think the stipulation that appellant had no direct contractual relations with the corporation does not militate against the conclusion that there was no variance between the allegation and proof as to ownership of the money alleged to have been embezzled. We quote the language of Judge Ramsey in Smith v. State, 109 S. W., 118, as follows:

"We think our statute was intended to include and embrace cases where money was received by virtue of the express terms of the employment or agency, or where such money was received by virtue of the implied authority of the agent, or the authority fairly and reasonably resulting from the express terms of his employment or agency, and that the better view is, that, where such money was received by authority, either direct, or such as might be reasonably implied from the situation of the parties and their course of dealing, having in view their position and attitude and the confidential nature of their relations, in every such case it ought to be held that such money or property was in the care of such agent, by virtue of such office, agency, or employment. In other words, a reasonable rule of interpretation ought to be employed in testing this statute. Such a rule, if it may fairly be adopted, having in mind the language of the Code, ought to obtain as would discourage defalcation, and protect the employer and society. It ought not to be required by the state that in prosecutions for embezzlement it should be in peril of sustaining defeat in a just prosecution, because of some technical lack of specific authority in respect to some particular act, if, under all the circumstances such authority might reasonably be implied and found as a fact

by the jury in the light of the relation existing between the parties."

See Powell v. State, 198 S. W., 317.

Some of the bills of exception relate to the argument of counsel for the state. Without setting forth the argument, the opinion is expressed that, in view of the evidence, the bills fail to reflect reversible error.

Failing to find reversible error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.