(No. 36981.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERBERT HART, Plaintiff in Error.

*Opinion filed November 14, 1966.*

Robert W. Erickson, of Deerfield, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

The defendant, Herbert Hart, waived a trial by jury, and after a trial by the court he was convicted of armed robbery and sentenced to imprisonment for not less than four nor more than twelve years. On this writ of error he contends that a written statement, which he made after his arrest, was received in evidence in violation of his privilege against self-incrimination and his constitutional right to counsel.

A pretrial sanity hearing was requested by the defendant's retained counsel, and a jury determined that the defendant was competent to stand trial. At the trial, the victim of the robbery testified that about 4:30 A.M. on June 19, 1960, the defendant, who was wearing white coveralls and was armed with a pistol, entered the garage where the witness was working, stuck a gun in his side, and demanded money. The defendant tied the witness's hands, took his coin purse, and left the garage by the back door. The witness ran out the front door with his hands tied behind him, and met two policemen who took him into their squad car. Almost at once they saw the defendant. When the defendant was ordered to stop, he ran behind a parked car. After an exchange of shots with the police officers, he surrendered. An officer testified that he asked the defendant "if he had held up the complainant, and the defendant answered, 'Yes.' " The stolen coin purse was recovered from the de-

fendant when he was searched at the scene of his arrest.

When the arresting officer was asked whether, after the defendant was arrested, questions put to him and answers made by him were reduced to writing, the officer answered that he believed so. The prosecutor then called for Detective Bryne or Carbone, apparently the officers who had taken the defendant's statement. Defendant's attorney, however, stated, "We will stipulate as to the testimony on the statement," which was then admitted into evidence.

The defendant contends that his written statement was obtained in violation of his constitutional right to counsel and his constitutional privilege against self-incrimination. As to the defendant's right to counsel, the short answer is that *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, upon which he relies, was decided by the Supreme Court of the United States long after defendant's trial in 1960, and in *Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, the court held that the decision in *Escobedo* applies only to trials commenced after June 22, 1964. (See, *People* v. *McGuire,* 35 Ill.2d 219.) The contention that defendant's privilege against self-incrimination was violated is likewise without merit. The new rules governing police interrogation which were announced in *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, are not applicable. See *Johnson* v. *New Jersey,* 384 U.S. 719.

The record does not show how much time elapsed between the defendant's arrest and the signing of the statement, but the defendant's present counsel indicates that the statement was signed three hours after arrest. There is no hint of police harassment or intimidation, and we find nothing in the simple process of question and answer, even upon the unlikely assumption that it lasted for three hours, which would render an otherwise voluntary statement involuntary. *Cf. Haynes* v. *Washington,* 373 U.S. 503, 10 L. Ed. 2d 513; *Lynumn* v. *Illinois,* 372 U.S. 528, 9 L. Ed. 2d 922.

The defendant's counsel also argues that "if Defendant Hart had a will, at least to some degree, his will was fettered by an extremely low mentality and the lack of power to resist even the slightest pressure. * * * It is submitted that Defendant Hart's will was such that any confession which he made could not have been the product of rational intellect and a free, or unfettered, will." This argument is based upon the testimony of Dr. Haines, Director of the Behavior Clinic of Cook County, at the pretrial hearing to determine the defendant's competence to stand trial. Dr. Haines examined the defendant from 20 minutes to an hour on three occasions. He testified rather fully as to his first examination of the defendant, at which the defendant responded that he did not know, or gave vague answers to many simple questions put to him concerning his past life. Dr. Haines testified that subsequently the defendant's behavior changed and he answered questions more readily. But his testimony as to the details of subsequent examinations, and particularly as to the factors that led him to believe that the defendant was competent to stand trial, was cut off by the defendant's attorney.

Dr. Haines testified that at the first examination he asked the defendant what was in the written statement given to the police, and the defendant replied: "I don't know —that man asked me a million questions—when he got through asking me the questions, they told me I should sign the papers—so I signed it." During that same examination the defendant stated that he had no children. When Dr. Haines, referring to an information sheet, said, "It says here that you have three children, 13, 17 and 18", the defendant answered, "That's been a long time ago—they can't expect a man to remember all that, do they? Good gracious." Dr. Haines testified further that the defendant's mother told him that the defendant was in the third grade when he was 14 years old, and at the age of two had fallen three stories to the ground. He also testified that a psychologist

had reported that the defendant's I.Q. was 44, in the "imbecile" range, while at the time of the defendant's discharge from the penitentiary in 1953 it was recorded as 91, in the "average" range.

In our opinion the record does not sustain the contention that the defendant lacked sufficient mentality to make a voluntary confession. It is apparent from Dr. Haines's testimony that he believed that the defendant was feigning a lack of mental capacity. The jury heard the testimony of the defendant and observed him, and also heard the testimony of Dr. Haines, and its verdict found that the defendant understood the nature of the charges against him, and was competent to cooperate with his attorney. While this determination is not, of course, a direct adjudication of the voluntariness of the defendant's confession, it is inconsistent with the present contention that the defendant was incapable of making a confession.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*