(No. 40574.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIAM E. McGUIRE, Appellant.

*Opinion filed January 19, 1968.—Rehearing denied March 26, 1968.*

WILLIAM H. HENNING, Public Defender, of Galesburg, for appellant.

DONALD C. WOOLSEY, State's Attorney, of Galesburg, for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, William E. McGuire, was found guilty of burglary in the circuit court of Knox County and sentenced to the penitentiary for a term of not less than 8 nor more than 12 years. He then prosecuted a direct appeal to this court (35 Ill.2d 219) raising, *inter alia,* constitutional issues concerning the admission of an oral statement in which he acknowledged breaking into the building in question. In particular he claimed, relying upon *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, that he was denied his right to counsel and that, apart from *Escobedo,* his statement was involuntary and the admission deprived him of due process of law. We considered all his contentions and, with the exception of his attack on the voluntariness of his statement, resolved them against him. However, we found it difficult to pass on the voluntariness of defendant's confession since evidence relevant to this issue was not confined to the hearing on his motion to suppress but was presented either in connection with his motion to determine his competency to stand trial, or at trial itself after the motion to suppress had been overruled. In view of this difficulty, and in the interests of orderly procedure, we remanded the cause, not for a full trial, but for a new hearing on the admissibility of his statement wherein both parties could present additional evidence. We specifically directed the trial court, if it found the confession inadmissible, to grant a new trial or, if it found it to be admissible, to enter a new judgment of conviction. 35 Ill.2d at 234.

Upon remandment, the trial court, following a plenary hearing where additional testimony was introduced, ruled the confession admissible and entered a new judgment of conviction. From that judgment defendant now appeals, challenging the correctness of the ruling.

The uncontradicted facts adduced at the hearing were that defendant was arrested about 11:30 P.M., on August 29, 1964, after being involved in a shooting with a police officer. He was taken to a hospital in Galesburg for treatment of a gunshot wound in his leg and remained in a room there from approximately 1:30 A.M. on August 30 until 2:30 P.M. on August 31 when he was taken before a magistrate for a preliminary hearing. The oral statement in question was made in that room at 9:30 A.M. on August 31 in the presence of Deputy Sheriff Marion Stewart and Mrs. Barbara Gans, a registered nurse.

At the instant hearing, as in his earlier appeal (35 Ill.2d at 221), defendant made no claim of any misuse of physical force, contending primarily that his will was "overborne" by excessive interrogation. His testimony revealed that he was born in 1929, that when he was fourteen he "burned down" three buildings in Little York, Illinois, for which he was committed to the Illinois Neuropsychopathic Institute where he remained for ten months, and that a year after his release he committed a burglary for which he was sentenced to 1 to 10 years in the Illinois State Penitentiary. Following his release, he was charged with theft in 1955 but found incompetent to stand trial and committed to the Illinois Security Hospital for the criminally insane. A year later he was adjudged sane, tried and convicted on the theft charge, and again sent to the penitentiary from which he was released in 1963.

Defendant further testified that following emergency room treatment at the hospital he was placed in a bed and his left wrist handcuffed thereto, that he was given injections of various drugs, that he had conversations throughout

the night (August 30) with police officers, particularly Officer Rohweder, concerning his shooting of the arresting officer, that he did not sleep that night and that an officer told him that he (the officer) would have shot him in the head four or five times had he been the arresting officer. Defendant stated that he did not request an attorney because he had no money, that he told Officers Rohweder and Johnson that he had no friends and everyone was trying to crush and destroy him, that these officers never informed him of his rights to counsel and to remain silent, that during the afternoon of August 30 he had incessant conversation with Deputy Stewart, that he unequivocally denied committing the burglary, and that during this period and the night of August 30 he wept most of the time, sleeping only about two hours. He further stated that prior to giving the oral statement to Deputy Stewart the next morning (August 31) at about 9:30, Stewart had said "it would be better for me if I gave the statement," that he still had not been advised of his rights by anyone, that he had no way of getting in touch with anyone, that when he gave the statement he had resigned himself to death, that after his statement was reduced to writing, insertions were made to the effect that he had been advised of his rights and he subsequently initialed these insertions only to show that he was present when the insertions were made, and that he signed the statement without reading it or having it read to him.

Due to the nature of defendant's contentions and his past history of mental disturbances, psychiatric testimony was introduced at the hearing. A defense witness, Dr. Neveln, testified that he had examined defendant in September of 1964, that his diagnosis was "sociopathic personality disturbance, anti-social reaction", but that defendant was not psychotic and could appreciate the criminality of his conduct. He further testified, in response to a hypothetical question incorporating defendant's criminal and medical history and positing that defendant had been questioned

intermittently in custody for 32 hours with only two hours sleep, that he might make an untrue statement to the police admitting guilt to obtain relief from the interrogation. He also stated, on cross-examination, that if defendant had actually had more sleep and relief from questioning than posited in the hypothetical question, the chances that he would make a false statement would be greatly reduced.

In rebuttal, Dr. Smith testified on the basis of past examination of defendant, that he would not "classify him as a person who is in need of mental treatment by being mentally ill," that defendant "had very superior intelligence" although he had been found "to have an inadequate personality, emotional immaturity, with compensatory egocentric mechanism, and anti-social drives," that defendant "has told me about his feeling that the world was against him, that everyone was trying to crush or destroy him" but that he didn't think defendant "could be psychologically induced into making a confession under questioning by the police, feeling that the world was against him, that he had no one to turn to."

With regard to the conditions of defendant's confinement at the hospital, Barbara Gans, the supervising floor nurse, testified that defendant was given penicillin and tetanus shots but was not given any "drugs that would affect his mind", that there was always a police guard outside his room, that an officer would accompany the nurse into the room, that she never saw more than one officer at a time in the room, that defendant did not appear to be grief-stricken, and that she never heard him weep or saw any display of force or argument. This testimony was corroborated by another nurse on duty during this period. Mrs. Gans further testified that she never heard defendant ask to see anyone, that she was present in the room on the morning of the 31st when he made his statement, and that the deputy who took the statement advised him of his rights to counsel and to remain silent.

Deputy Stewart corroborated the foregoing testimony and further stated that he did tell defendant "it would benefit him" if he gave a statement, and that when the statement was reduced to writing, his advice to defendant concerning his rights was mistakenly left out but thereafter inserted with defendant initialing it.

Sheriff Jones testified that he questioned defendant for 15 minutes on the morning of August 30 in the presence of two other officers, that no one threatened him during this time, and that defendant denied the burglary. Seven other police officers, who at various times had contact with defendant between his arrest and his appearance before the magistrate, testified that at no time was defendant mistreated by them or anyone else, that they knew of no questioning of him other than the two incidents related by Sheriff Jones and Deputy Stewart, and that defendant made no complaint to them of pain or coercion. One of these officers (Friend) stated that defendant told him he (the officer) was "lucky" because he had almost shot him on a certain occasion, that he didn't have a conscience and policemen did and therefore wouldn't shoot first. To this statement, Friend said he responded "Don't count on me having a conscience. I might be the kind that would shoot first." Officer Friend then denied that he said anything else which could be construed as a threat to kill defendant.

At the close of this testimony the trial judge found that the confession was voluntary. It is axiomatic that such a finding by the trial judge who stands in the best position to weigh the credibility of the witnesses will not be overturned on review unless contrary to the manifest weight of the evidence. (*People* v. *Spencer*, 27 Ill.2d 320, 325; *People* v. *Sims*, 21 Ill.2d 425.) Defendant's claim that his confession was the product of psychological coercion was supported almost exclusively by his own testimony, largely describing certain subjective feelings. His charges of lack of sleep, incessant interrogation, constant weeping, and threats

against his life were directly contradicted by the testimony of all the police officers and nurses whom he claimed had contact with him during his stay in the hospital. This latter testimony was clear and convincing except as to whether defendant was advised of his rights to counsel and to remain silent and, if so, at what point in his detention he was so advised. Of course, as we noted in our earlier opinion (35 Ill.2d at 225, 226) in this instance the absence of an attorney during interrogation and the failure to advise defendant of his right to remain silent were only attendant circumstances to be considered in determining the voluntariness of his confession. See *Davis* v. *North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895, 86 S. Ct. 1761.

The psychiatric testimony established that defendant did suffer from certain personality disorders. But it did not establish that defendant, due to these disorders, was more susceptible to psychological coercion than any normal individual.

Furthermore, we find that the Deputy Sheriff's statement that "it would be better" for defendant if he confessed did not constitute an inducement or promise of leniency rendering the confession involuntary. Such a statement, standing alone, as was the case here, is not sufficient inducement to invalidate an otherwise voluntary confession. *People* v. *Pugh,* 409 Ill. 584, 595.

We therefore affirm the new judgment of conviction entered.

*Judgment affirmed.*