No. 47,619

STATE OF KANSAS, *Appellee,* v. NATHANIEL SMITH, *Appellant.*

(530 P. 2d 1215)

Opinion filed January 25, 1975.

*Darrel W. Frogley,* of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* District Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal from a conviction of murder in the second degree (K. S. A. 21-3402). Defendant was charged and tried on a two count information. In count No. 1 he was charged with murder in the first degree (K. S. A. 21-3401) and in count No. 2 with rape. Defendant was convicted of murder in the second degree on count No. 1 and acquitted of the charge of rape on count No. 2. Defendant's defense at trial was that the killing was in self-defense and that the alleged rape was a voluntary sexual agreement between the victim and himself.

The state's evidence consisted of a statement made by defendant,

the testimony of several police officers, and the testimony of Debra Chase, the alleged victim of the rape and the wife of the murder victim, Roosevelt Chase. Although there was considerable conflict in the testimony, the sufficiency of the evidence is not challenged on appeal.

The events giving rise to the charges occurred during the night of July 11, 1973. Defendant resided in an apartment house in Kansas City, Kansas. His apartment was on the same floor and across the hall from the apartment occupied by the Chases.

Debra Chase testified that during the evening in question defendant confronted her in her apartment and forced her to accompany him to his apartment where he bound her with an extension cord, taped her mouth, and raped her. Defendant's version was that Debra made overtures, voluntarily accompanied him to his apartment, and engaged in sexual intercourse. While these events were taking place Debra's husband (Roosevelt) returned to the apartment building, knocked on defendant's door, and inquired if his wife was there. Defendant unsuccessfully attempted to convince Chase that his wife was not in defendant's apartment. Failing to convince Chase, defendant went out into the adjacent hallway where he was met by Chase who, defendant said, was carrying a gun. Debra testified that defendant had the gun at the time he raped her and also had a knife with which he had threatened her.

According to defendant, he and Chase had previously arranged to handle some marijuana which he had hidden in his sister's garage. According to defendant's statement, after the confrontation with Chase in the hallway, defendant went out to his car, which would not start; then he came back into the apartment house and told Chase, whereupon Chase offered to drive defendant to his sister's house. After defendant and Chase arrived at the sister's house an argument ensued—first outside the house and later in the garage, where defendant and Chase got into a fight. According to defendant he was armed with a knife and Chase was armed with the gun. In the course of the ensuing scuffle, defendant got the gun away from Chase and shot him once; Chase fell in a corner of the garage, behind an automobile. Defendant at this point had the gun in one hand and the knife in the other. Defendant said that after Chase was shot he commenced shouting for help and trying to get back on his feet. At this point, defendant said—"I got scared and stabbed him again in the chest three or four times." Defendant

stated that he left the garage and proceeded to the basement of his sister's house where he took a shower and changed clothes.

Defendant's brother-in-law, Clarence Williams, came down to the basement where defendant told him what had happened. Defendant turned over the .38 caliber revolver to his brother-in-law. Defendant's sister, Carmen Williams, and her husband, Clarence, persuaded defendant to accompany them to the police station. Before reaching the station, however, defendant jumped out of the Williams' car and ran to a girl friend's apartment. Mrs. Williams later contacted her brother and again persuaded him to agree to call the police and surrender himself. Mrs. Williams was with defendant when he gave his statement to Detective Parks.

At the police station Detective Parks immediately had defendant sign a waiver of rights and began interrogating him concerning the killing. After the statement was completed, charges were filed against the defendant.

Defendant's first point of error is that his statement was erroneously admitted into evidence. Defendant advances several arguments in this regard. As we have noted, the statement in question was taken by Detective Parks of the Kansas City Police Department, and that, prior to any interrogation, defendant was given a full "Miranda warning" about which there is no dispute. Defendant challenged the statement by a motion to suppress before trial (K. S. A. 22-3215). After hearing evidence the trial court denied the motion. Defendant's first argument on this point is that Detective Parks, by promising to speak to the judge if defendant cooperated, induced him to make the statement. As narrated in the record, the testimony of Parks is that after a brief discussion about the killing of Chase, Parks told defendant that if he cooperated with the police that Parks would make the fact known to the judge. Parks further testified during the hearing on defendant's motion to suppress that he did tell the trial judge of his promise to defendant. Parks made no representation to defendant that the court might be more lenient nor did Parks make any representation which could have generated any hope of immunity on the part of defendant. When a trial court, pursuant to the provisions of 22-3215, conducts a preliminary inquiry on the admissibility of an extrajudicial statement given by an accused and determines the statement was freely, voluntarily and intelligently given, and admits the statement into evidence at the trial, this court, on appeal, will accept such determination if it is supported by substantial competent evidence.

(*State v. Law*, 214 Kan. 643, 522 P. 2d 320; *State v. Brunner*, 211 Kan. 596, 507 P. 2d 233; and *State v. Harden*, 206 Kan. 365, 480 P. 2d 53.) Statements by interrogating officers, similar to that made by Detective Parks, have been held not to be such an inducement as would vitiate a confession. For example in *Hargett v. State*, 235 Ark. 189, 357 S. W. 2d 533, the interrogator told accused he would "help him all I could" if he confessed. In *The People v. Hartgraves*, 31 Ill. 2d 375, 202 N. E. 2d 33, cert. den. 380 U. S. 961, 14 L. Ed. 2d 152, 85 S. Ct. 1104, the officer told defendant it would go easier in court for you if you confessed. (See, also, *Brooks v. State*, [Del.], 229 A. 2d 833, and *The People v. McGuire*, 39 Ill. 2d 244, 234 N. E. 2d 772, cert. den. 393 U. S. 884, 21 L. Ed. 2d 160, 89 S. Ct. 193.) The record discloses that defendant had given a part of his confession before he asked Parks to convey the fact of his cooperation to the judge. While there was some conflicting testimony surrounding the giving of the statement, we believe there was ample evidence to support the trial court's determination.

Concerning his statement, defendant also complains that Parks rephrased some of defendant's words. Parks testified that defendant had ample opportunity to read the statement, that some changes were made, but that defendant initialed each change, signed each page, and signed the statement after reading it in its entirety. We find no merit in defendant's argument in this regard.

Defendant makes the further argument that his excited mental state, at the time, precluded the admission of his statement. The general rule concerning the effect of a defendant's mental condition is stated in 2 Wharton's Criminal Evidence (12th Ed.), § 386:

"Evidence tending to establish that a confesser was ill or in a hysterical condition, and therefor not in full possession of his facilities at the time he confessed his guilt, does not affect the admissibility of the confession, but bears on the weight and effect to be given the confession." (pp. 119-120.)

A similar matter was considered in *State v. Brunner*, 211 Kan. 596, 507 P. 2d 233, wherein we held:

"The mental condition of a defendant at the time he makes a statement is relevant to the issue of voluntariness but is not necessarily conclusive; its weight is for the trier of fact." (Syl. ¶ 5.)

We find no error shown in the admission of defendant's statement on any of the grounds urged.

Defendant's second point relating to the admission into evidence of pictures of the victim's body has been abandoned on appeal.

In his third point on appeal, defendant claims error in the ad-

mission of the record of prior convictions in Allen County for assault with intent to do great bodily harm to a man and a separate count of felonious assault on a woman. Defendant contends the introduction of his prior convictions was used only to prejudice the jury, rather than as proof of any of the permissible elements of an offense enumerated in K. S. A. 60-455. Defendant further argues that the Allen County assault offenses are not so similar to rape and murder as to be admissible under 60-455. Defendant's contentions are directed only to the admission of the evidence in question. He makes no complaint concerning the court's limiting instruction which was submitted to the jury in connection with the admission of the prior convictions.

We note first the record does not show that defendant lodged an objection to the introduction of the evidence as required by K. S. A. 60-404 in order to secure appellate review. The statute provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

See, also, *State v. Cantrell*, 201 Kan. 182, 440 P. 2d 580, cert. den. 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315; and *State v. Freeman*, 195 Kan. 561, 408 P. 2d 612, cert. den. 384 U. S 1025, 16 L. 2d 1030, 86 S. Ct. 1981.

Nevertheless, we have examined the record in this regard. The Allen County offenses consisted of an assault with a gun upon a man who was shot several times and a felonious assault upon his female companion with the intent to rape her. In the instant case the defenses asserted were self-defense as to the murder charge and voluntary sex as to the rape charge. Thus, intent and motive were at issue. Under such circumstances we believe the probative value of the prior offenses was not substantially outweighed by the prejudicial nature of the recitation of the prior crimes. (*State v. Johnson*, 210 Kan. 288, 502 P. 2d 802.)

Defendant next contends the trial court committed reversible error in submitting instruction No. 18, which instructed that if defendant were found guilty of murder in the first degree the punishment prescribed is death or imprisonment for life, and that it was the jury's duty to determine which of the two punishments the defendant should receive under the provisions of K. S. A. 21-4501. Defendant admits no objection was made, but contends that since a constitutional issue is involved the question is properly before us.

At oral argument the district attorney informed us that at the time of trial he was not aware of our decision in *State v. Randol*, 212 Kan. 461, 513 P. 2d 248. In *Randol* we considered the case of *Furman v. Georgia*, 408 U. S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726, and held the death penalty provision of our statute to be constitutionally impermissible. We pointed out that a trial court, in a Class A felony case, should no longer instruct a jury as to the death penalty. However, we said in *Randol:*

". . . [T]he instruction . . . in the present case did not constitute prejudicial error since the jury fixed a penalty of life imprisonment." (p. 471.)

Since the jury's verdict in the case at bar was murder in the second degree, we do not believe the instruction in question rises to the degree of reversible error under the circumstances.

In his last point defendant argues the verdict rendered by the jury was inconsistent. The substance of defendant's theory is that since the jury did not believe Debra's testimony concerning the alleged rape it was inconsistent for the jury to believe her testimony concerning the altercation preceding the killing of Chase. We cannot agree with defendant's rationale of the jury's verdict. The only evidence concerning the rape charge was the conflicting testimony of defendant and Debra Chase. As to the murder charge, Debra's testimony was only prefatory to the critical events surrounding the killing of Chase. The evidence produced by the state, both circumstantial and direct, was sufficient to prove all of the elements of second degree murder. There was latitude in the evidence for the jury to find defendant guilty of murder and not guilty of rape. The jury simply did not believe Debra's testimony as to the rape charge. When confronted with a similar contention in *State v. Freeman*, 198 Kan. 301, 424 P. 2d 261, we cited the landmark case of *Dunn v. United States*, 284 U. S. 390, 76 L. Ed. 356, 52 S. Ct. 189, 80 A. L. R. 161, and held a verdict of guilty on a robbery charge not to be inconsistent with a verdict of not guilty on a charge of forcible rape. (See, also, *State v. Hund*, 115 Kan. 475, 222 Pac. 766; *State v. Hobl*, 108 Kan. 261, 194 Pac. 921; and *State v. Wheeler*, 95 Kan. 679, 149 Pac. 701.)

We find no error warranting a reversal, therefore the judgment of the trial court is affirmed.